**PUBLISHED**

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,

        *Plaintiff-Appellee,*

v.

UNDER SEAL,

        *Defendant-Appellant.*

No. 12-4055

Appeal from the United States District Court
for the District of South Carolina, at Charleston.
David C. Norton, District Judge.
(2:08-cr-01198-DCN-1)

Argued: December 7, 2012

Decided: February 26, 2013

Before WILKINSON, AGEE, and KEENAN,
Circuit Judges.

---

Affirmed by published opinion. Judge Agee wrote the opinion, in which Judge Wilkinson and Judge Keenan joined.

---

**COUNSEL**

**ARGUED:** Ann Briks Walsh, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Charleston, South Carolina, for Appellant. Jeffrey Mikell Johnson, OFFICE OF THE UNITED STATES ATTORNEY, Columbia, South Carolina, for Appellee. **ON BRIEF:** William N. Nettles, United States Attorney, Matthew J. Modica, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Columbia, South Carolina, for Appellee.

---

**OPINION**

AGEE, Circuit Judge:

The juvenile defendant-appellant ("Appellant") appeals from the judgment of the district court which imposed, as a condition of his juvenile delinquent supervision, that Appellant register under the Sex Offender Registration and Notification Act ("SORNA"), 42 U.S.C. § 16901 *et seq.* Appellant argues that SORNA's registration requirements contravene the confidentiality provisions of the Federal Juvenile Delinquency Act ("FJDA"), 18 U.S.C. § 5031 *et seq.*, and violate the Eighth Amendment's prohibition on cruel and unusual punishment. As a consequence, Appellant contends the district court erred in requiring him to register under SORNA. Because we conclude that Congress, in enacting SORNA, intentionally carved out a class of juveniles from the FJDA's confidentiality provisions, and that SORNA's registration requirements are not punitive as applied to Appellant, the district court did not err by imposing the sex offender registration condition.

I.

In 2007, Appellant began residing in Japan with his mother, an active member of the United States Navy, his stepfather,

and two half-sisters, ages ten and six at the time. On February 21, 2008, Appellant's mother reported to the United States Naval Criminal Investigation Service ("NCIS") that Appellant had been having inappropriate sexual contact with his two half-sisters. NCIS conducted an investigation, which confirmed, through sexual assault medical examinations, that both girls had been anally penetrated and the youngest vaginally penetrated by Appellant.

On December 4, 2008, Appellant was charged in a one-count Information filed under seal in the District of South Carolina.[1] In general terms, the Information alleged that Appellant, a juvenile who was under the age of eighteen, had committed an act of juvenile delinquency, aggravated sexual abuse, in violation of 18 U.S.C. §§ 5032 and 3261(a). Appellant admitted true to the allegations in the Information on September 16, 2009.

After a presentence investigation report was completed, a dispositional hearing was held on October 8, 2009, in which the district court adjudicated Appellant delinquent. Appellant was sentenced to incarceration until July 1, 2010, and placed on a term of juvenile delinquent supervision not to exceed his twenty-first birthday, subject to a number of special conditions. As a special condition, the district court ordered Appellant to comply with the mandatory reporting requirements of SORNA.

Due to Appellant's objection to the registration requirements under SORNA at sentencing, the district court required the parties to provide the court with memoranda on the issue.

---

[1]Jurisdiction was properly based on 18 U.S.C. § 3261(a) because Appellant was "accompanying" a member of the Armed Forces outside the United States. Under 18 U.S.C. § 3267(2)(A)(i), a person "accompanies" a member of the Armed Forces when he or she is a dependent of that member of the Armed Forces. Appellant and his family thereafter resided in South Carolina, which allowed for prosecution in the District of South Carolina under 18 U.S.C. § 3238.

On December 7, 2011, the district court issued an Order overruling Appellant's objection to the sex offender registration condition.

Appellant filed a timely notice of appeal, and we have jurisdiction pursuant to 28 U.S.C. § 1291.

## II.

SORNA, which is part of the Adam Walsh Child Protection and Safety Act of 2006, 42 U.S.C. § 16901 *et seq.*, was enacted "to protect the public from sex offenders and offenders against children, and in response to the vicious attacks by violent predators." 42 U.S.C. § 16901. SORNA "establishes a comprehensive national system for the registration of those offenders." *Id.*

SORNA defines "sex offender" as "an individual who was convicted of a sex offense." 42 U.S.C. § 16911(1). The statute also specifies:

> The term "convicted" or a variant thereof, used with respect to a sex offense, *includes adjudicated delinquent as a juvenile for that offense, but only if the offender is 14 years of age or older at the time of the offense and the offense adjudicated was comparable to or more severe than aggravated sexual abuse* (as described in section 2241 of Title 18), or was an attempt or conspiracy to commit such an offense.

42 U.S.C. § 16911(8) (emphasis added). As described under 18 U.S.C. § 2241(c), any person who "knowingly engages in a sexual act with another person who has not attained the age of 12 years" may be convicted of aggravated sexual abuse.

For purposes of the case at bar, we note that Appellant meets the two statutory prerequisites for "an individual who was convicted of a sex offense." 42 U.S.C. § 16911(1). He

was "14 years of age or older at the time of the offense," and he pled true to the Information for committing an act of juvenile delinquency for what would have been a violation of 18 U.S.C. § 2241(c)—aggravated sexual abuse. 42 U.S.C. § 16911(8); (J.A. 8.) Under the specific terms of SORNA, Appellant qualifies as a sex offender.

Pursuant to SORNA's comprehensive national registration system, sex offenders must "register, and keep the registration current, in each jurisdiction where the offender resides, where the offender is an employee, and where the offender is a student." 42 U.S.C. § 16913(a). The offender must "appear in person, allow the jurisdiction to take a current photograph, and verify the information in each registry." 42 U.S.C. § 16916. Each jurisdiction must make public the contents of its sex offender registry, including each registrant's name, address, photograph, criminal history, and status of parole, probation, or supervised release. 42 U.S.C. §§ 16914(b), 16918(a).

In contesting his SORNA registration requirements, Appellant raises two issues on appeal. First, he contends that SORNA's registration requirements contravene the confidentiality provisions of the FJDA. He also contends that SORNA's registration requirements, as applied to him, violate the Eighth Amendment's prohibition on cruel and unusual punishment. We review each issue *de novo*. *United States v. Abuagla*, 336 F.3d 277, 278 (4th Cir. 2003) (questions of statutory interpretation); *United States v. Malloy*, 568 F.3d 166, 176 (4th Cir. 2009) (constitutional challenges).

III.

A.

We first consider whether the district court's imposition of SORNA's registration requirements contravenes the confidentiality provisions of the FJDA, which governs the detention

and disposition of juveniles charged with delinquency in the federal system. The primary purpose of the FJDA is to "remove juveniles from the ordinary criminal process in order to avoid the stigma of a prior criminal conviction and to encourage treatment and rehabilitation." *United States v. Robinson*, 404 F.3d 850, 858 (4th Cir. 2005).

The FJDA includes a number of provisions to ensure that information about juvenile delinquency proceedings remains closed to public release. 18 U.S.C. § 5038(a) provides that "[t]hroughout and upon the completion of the juvenile delinquency proceeding, the records shall be safeguarded from disclosure to unauthorized persons." 18 U.S.C. § 5038(a). "[I]nformation about the juvenile record may not be released when the request for information is related to an application for employment, license, bonding, or any civil right or privilege," except in limited circumstances relating to court proceedings, medical treatment, law enforcement investigation, or national security. *Id.* The FJDA specifies that the identity and image of the juvenile may not be disclosed even where proceedings are opened or documents are released: "neither the name nor picture of any juvenile shall be made public in connection with a juvenile delinquency proceeding." 18 U.S.C. § 5038(e).

As a consequence of the FJDA statutory restrictions, Appellant argues that the application of SORNA's registration requirements contravenes the FJDA. Specifically, he contends that the FJDA mandates the non-disclosure of juvenile delinquency proceeding records, which is in direct contradiction to the mandatory reporting requirements of SORNA.

SORNA's registration provision makes public information that would otherwise remain confidential under the FJDA. The FJDA provides that "[u]nless a juvenile who is taken into custody is prosecuted as an adult neither the *name* nor *picture* of any juvenile shall be made public in connection with a juvenile delinquency proceeding." 18 U.S.C. § 5038(e)

(emphasis added). As previously noted, the FJDA further provides that "information about the juvenile record may not be released when the request for information is related to an application for employment, license, bonding, or any civil right or privilege." 18 U.S.C. § 5038(a). In direct contrast, SORNA requires that a sex offender registry include the *name*, address, physical description, criminal history and status of parole, probation, or supervised release, *current photograph*, and other identifying information. 42 U.S.C. § 16914. SORNA further requires that "each jurisdiction shall make available on the Internet, in a manner that is readily accessible to all jurisdictions and to the public, all information about each sex offender in the registry." 42 U.S.C. § 16918(a). Because it is clear that the government's public release of juvenile records authorized by SORNA would be prohibited under the FJDA, but for the passage of SORNA, we agree with Appellant that the two statutes conflict.

Where two statutes conflict, "a specific statute closely applicable to the substance of the controversy at hand controls over a more generalized provision." *Farmer v. Emp't Sec. Comm'n of N.C.*, 4 F.3d 1274, 1284 (4th Cir. 1993). We conclude that SORNA is the more specific statute, and therefore controls over any contrary provision of the FJDA. SORNA unambiguously directs juveniles ages fourteen and over convicted of certain aggravated sex crimes to register, and thus carves out a narrow category of juvenile delinquents who must disclose their status by registering as a sex offender. *See* 42 U.S.C. § 16911(8). For all other juvenile delinquents, the FJDA's confidentiality provisions remain in force.

The primacy of SORNA over a conflicting provision of the FJDA is further elucidated by the clearly stated intent of Congress to limit confidentiality in the case of certain juvenile sex offenders. In enacting SORNA, Congress recognized the competing interests of juvenile confidentiality (under the FJDA) and public safety (under SORNA), but unequivocally recognized in enacting SORNA that:

> While the Committee recognizes that States typically protect the identity of a juvenile who commits criminal acts, in the case of sexual offenses, the balance needs to change; no longer should the rights of the juvenile offender outweigh the rights of the community and victims to be free from additional sexual crimes. . . . [SORNA] strikes the balance *in favor of protecting victims, rather than protecting the identity of juvenile sex offenders*.

H.R. Rep. No. 109-218, pt. 1, at 25 (2005), 2005 WL 2210642 (Westlaw) (emphasis added); *see also* 152 Cong. Rec. S8012-02 (daily ed. July 20, 2006) (statement of Sen. Kennedy), 2006 WL 2034118, at *S8023 (Westlaw) ("This compromise allows some offenders over 14 to be included on registries, but only if they have been convicted of very serious offenses."). Congress was aware that it was limiting protections under the FJDA by applying SORNA to certain juvenile delinquents, and clearly intended to do so.**²**

Although Appellant may disagree with the policy implications of SORNA, particularly with regard to confidentiality, Congress considered these concerns in enacting SORNA. Our review is limited to interpreting the statutes, and both the statutory text, legislative history and timing of SORNA indicate that its reporting and registration requirements were plainly intended by Congress to reach a limited class of juveniles

---

**²**We further note that there is an additional ground for deciding that SORNA is the controlling statute: *leges posteriores priores contrarias abrogant*—the rule that the more recent of two conflicting statutes shall prevail. *Hale v. Gaines*, 63 U.S. 144, 148–49 (1859); *see also Watt v. Alaska*, 451 U.S. 259, 285 (1981) (Stewart, J. dissenting) ("If two inconsistent acts be passed at different times, the last . . . is to be obeyed; and if obedience cannot be observed without derogating from the first, it is the first which must give way." (internal quotation marks omitted)). The relevant provisions of SORNA in this case were enacted in 2006; the relevant provisions of the FJDA in this case were enacted in 1996. *See* 42 U.S.C. §§ 16911, 16914, 16918; 18 U.S.C. § 5038.

adjudicated delinquent in cases of aggravated sexual abuse, including Appellant, despite any contrary provisions of the FJDA. We therefore hold that the district court properly determined SORNA's registration requirements applied to Appellant.

## B.

We next consider whether SORNA's registration requirements, as applied to Appellant, violate the Eighth Amendment's prohibition on cruel and unusual punishment.

The Eighth Amendment mandates that "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const. amend. VIII. The amendment prohibits "not only barbaric punishments, but also sentences that are disproportionate to the crime committed." *Solem v. Helm*, 463 U.S. 277, 284 (1983). Appellant contends that the consequences of requiring him to register as a sex offender under SORNA rise to the level of punishment.

To determine whether the application of SORNA to Appellant has a punitive effect, we utilize the two-part test set forth by the Supreme Court in *Smith v. Doe*:

> If the intention of the legislature was to impose punishment, that ends the inquiry. If, however, the intention was to enact a regulatory scheme that is civil and nonpunitive, we must further examine whether the statutory scheme is so punitive either in purpose or effect as to negate the State's intention to deem it civil.

538 U.S. 84, 92 (2003) (quotation marks and brackets omitted). The Supreme Court indicated that seven factors, previously enumerated in *Kennedy v. Mendoza-Martinez*, 372 U.S. 144, 168–69 (1963), provide a useful framework in determining whether a statute has a punitive effect:

(1) Whether the sanction involves an affirmative disability or restraint; (2) whether it has historically been regarded as a punishment; (3) whether it comes into play only on a finding of scienter; (4) whether its operation will promote the traditional aims of punishment—retribution and deterrence; (5) whether the behavior to which it applies is already a crime; (6) whether an alternative purpose to which it may rationally be connected is assignable for it; and (7) whether it appears excessive in relation to the alternative purpose assigned.

*See Smith*, 538 U.S. at 97; *see also Mendoza-Martinez*, 372 U.S. at 168–69. The *Mendoza-Martinez* factors are "neither exhaustive nor dispositive," but are "useful guideposts." *Smith*, 538 U.S. at 97 (internal citations and quotation marks omitted). Because we "ordinarily defer to the legislature's stated intent . . . *only the clearest proof* will suffice to override legislative intent and transform what has been denominated a civil remedy into a criminal penalty." *Id.* at 92 (internal citations and quotation marks omitted) (emphasis added).

We find that SORNA is a non-punitive, civil regulatory scheme, both in purpose and effect. The "clearest proof" sufficient to override the intent of Congress that SORNA's registration requirements are civil and non-punitive is absent in this case. *See id.* With SORNA, Congress purposefully sought to "establish[ ] a comprehensive national system for the registration of [ ] sex offenders" in order "to protect the public from sex offenders and offenders against children." 42 U.S.C. § 16901. This express language indicates that Congress sought to create a civil remedy, not a criminal punishment.[3]

---

[3]Although the goal of protecting the public might also be consistent with the purposes of criminal justice, the government's "pursuit of it in a regulatory scheme does not make the objective punitive." *Smith*, 538 U.S. at 94.

The legislative history of SORNA supports the conclusion that its purpose is civil and non-punitive. Congress noted that the earlier federal efforts to create sex offender registries state-by-state had left gaps in the system, resulting in an estimated 100,000 unaccounted for sex offenders. H.R. Rep. No. 109-218, pt. 1, at 14 (2005), 2005 WL 2210642 (Westlaw). With SORNA, Congress sought to fill those gaps and put in place a national sex offender registration system for the protection of the public. *See id.*

Most of SORNA, including the registration requirements at issue here, were placed by Congress in title 42 of the United States Code, the public health and welfare section, a civil law provision. Although the criminal penalties for violating SORNA are contained in section 18 of the United States Code, the crimes and criminal procedure section, that placement is not dispositive because civil regimes may impose criminal penalties for violations of their regulatory requirements and vice versa. *See Smith*, 538 U.S. at 95–96. While not controlling, the manner in which SORNA was codified in title 42 is indicative of Congress' intent that SORNA's registration provisions are civil in nature.

SORNA's statutory language, its legislative history, and its place of codification all indicate that the intent of Congress was to create a non-punitive regulatory framework to keep track of sex offenders.[4] Therefore, Appellant must present the "clearest proof" that the effect of the regulation is in fact so punitive as to negate its civil intent. *Id.* at 92 ("only the clearest proof will suffice to override legislative intent and trans-

---

[4]Several other circuits have similarly concluded that SORNA is a non-punitive, civil regulatory scheme. *See, e.g.*, *United States v. Young*, 585 F.3d 199, 204–05 (5th Cir. 2009); *United States v. Ambert*, 561 F.3d 1202, 1208 (11th Cir. 2009); *United States v. Lawrance*, 548 F.3d 1329, 1332–36 (10th Cir. 2008); *United States v. May*, 535 F.3d 912, 920 (8th Cir. 2008) ("SORNA's registration requirement demonstrates no congressional intent to punish sex offenders."). No circuit court of appeals has concluded to the contrary.

form what has been denominated a civil remedy into a criminal penalty" (internal citations and quotation marks omitted)).

Appellant cannot show, much less by the "clearest proof," that SORNA's effects negate Congress' intent to establish a civil regulatory scheme. Further, an analysis of the relevant *Mendoza-Martinez* factors compels us to conclude that the application of SORNA to Appellant does not have a punitive effect.[5]

First, SORNA does not subject Appellant to an affirmative disability or restraint. It "imposes no physical restraint, and so does not resemble the punishment of imprisonment . . . the paradigmatic affirmative disability or restraint." *Smith*, 538 U.S. at 100 (holding that Alaska's Sex Offender Registration Act did not impose an affirmative disability or restraint). Like the statute at issue in *Smith*, SORNA "does not restrain activities sex offenders may pursue but leaves them free to change jobs or residences," and registrants need not seek permission to do so. *Id.* at 100. SORNA does not prohibit changes, it only requires that changes be reported. Although Appellant is required under SORNA to appear periodically in person to verify his information and submit to a photograph, *see* 42 U.S.C. § 16916, this is not an affirmative disability or restraint. "Appearing in person may be more inconvenient, but requiring it is not punitive." *United States v. W.B.H.*, 664 F.3d 848, 857 (11th Cir. 2001).

---

[5]Both parties concede that the third and fifth *Mendoza-Martinez* factors—whether the regulation comes into play only upon a finding of scienter and whether the behavior to which it applies is already a crime—are of little weight in this analysis. The Supreme Court reached a similar conclusion in *Smith*, where it upheld Alaska's Sex Offender Registration Act as a non-punitive, civil regulatory scheme. 538 U.S. at 105 ("The regulatory scheme applies only to past conduct, which was, and is, a crime. This is a necessary beginning point, for recidivism is the statutory concern. The obligations the statute imposes are the responsibility of registration, a duty not predicated upon some present or repeated violation.").

Second, SORNA's registration requirements have not been regarded in our national history and traditions as punishment. In *Smith*, the Supreme Court held that adult sex offender registries do not resemble historical and traditional forms of punishment, such as public shaming. 538 U.S. at 98 (early punishments like whipping, pillory, branding, and "[e]ven punishments that lacked the corporal component, such as public shaming, humiliation, and banishment, involved more than the dissemination of information"). Appellant attempts to distinguish *Smith*, arguing that records involving criminal offenses committed by juveniles are not made public, such that disseminating information about them must be punitive. A court, however, may permit the inspection of records relating to a juvenile delinquency proceeding under some circumstances. *See* 18 U.S.C. § 5038(a). Further, the Supreme Court has held that "[o]ur system does not treat dissemination of truthful information in furtherance of a legitimate governmental objective as punishment." *Smith*, 538 U.S. at 98.

Third, SORNA does not promote the traditional aims of punishment, such as retribution and deterrence. While the threat of having to comply with SORNA's registration requirements may have a deterrent effect on would-be juvenile sex offenders, the Supreme Court has recognized that "[a]ny number of governmental programs might deter crime without imposing punishment. To hold that the mere presence of a deterrent purpose renders such sanctions 'criminal' would severely undermine the Government's ability to engage in effective regulation." *Id.* at 102 (quotation marks omitted).

Fourth, SORNA has a rational connection to a legitimate, non-punitive purpose—public safety—which is advanced by notifying the public to the risk of sex offenders in their community. *See id.* at 93 ("[I]mposition of restrictive measures on sex offenders adjudged to be dangerous is a legitimate non-punitive governmental objective and has been historically so regarded." (quotation marks omitted)). This, according to the Supreme Court, is the "most significant" factor in determining

whether a sex offender registration system is non-punitive. *Id.* at 102.

Finally, the regulatory scheme is not excessive with respect to SORNA's non-punitive purpose. Congress, in enacting SORNA, intentionally carved out a specific and limited class of juvenile offenders:

> SORNA does not require registration for juveniles adjudicated delinquent for all sex offenses for which an adult sex offender would be required to register, but rather requires registration only for a defined class of older juveniles who are adjudicated delinquent for committing particularly serious sexually assaultive crimes.

National Guidelines for Sex Offender Registration and Notification, 73 Fed. Reg. 38030-01, at 38050 (July 2, 2008), 2008 WL 2594934 (Westlaw). Under 42 U.S.C. § 16911(8), SORNA's registration requirements apply only to those who commit the most serious sex crimes and only if the offender was at least 14 years of age or older at the time of the offense.

In sum, when it enacted SORNA, Congress did not intend to impose additional punishment for past sex offenses but instead wanted to put into place a non-punitive, civil regulatory scheme. Given that intent, the question is whether Appellant has presented the "clearest proof" that SORNA is so punitive in effect, as applied to him, as to negate its civil intent. *Smith*, 538 U.S. at 92. That "clearest proof" is lacking, as examination of the *Mendoza-Martinez* factors makes clear. *Id.* at 97–106. We therefore hold that SORNA's registration requirements, as applied to Appellant, do not violate the Eighth Amendment's prohibition on cruel and unusual punishment.

## IV.

Accordingly, we affirm the judgment of the district court imposing the SORNA registration requirements as a condition of supervision on Appellant.

*AFFIRMED*